FILED

2020 May-18 PM 12:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | |
|---|---|
| **LUKE A. HAMMOND,** | |
| **Plaintiff,** | |
| **v.** | **CASE NO. 3:20-cv-_____** |
| **UNUM LIFE INSURANCE COMPANY OF AMERICA,** | |
| **Defendant.** | |

## COMPLAINT

COMES NOW the Plaintiff, Luke A. Hammond, and hereby files his Complaint against Defendant UNUM Life Insurance Company of America.

## **PARTIES**

1.     Plaintiff is a citizen of the State of Alabama, residing in Lauderdale County, Alabama, within the Northern District of Alabama.

2.     Defendant UNUM Life Insurance Company of America ("UNUM") is a Maine corporation with its principal place of business in Portland, Maine.  Unum is the insurer of a Disability Plan ("Plan") issued to Tenet Healthcare Corporation ("Tenet") for the benefit of Tenet's employees.

## JURISDICTION AND VENUE

3.      This action arises under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*  Plaintiff asserts a claim for long-term disability benefits pursuant to  29 U.S.C. § 1132 (a)(1)(B).  Venue is proper in this district pursuant to 29 U.S.C. § 1132 (e)(2) and 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

4.      Plaintiff is 34 years old, has a Ph.D. in physical therapy from UAB, and was employed by Tenet as a physical therapist.  Plaintiff's only employment, other than part-time jobs while in school, was as a physical therapist.

5.      Plaintiff was employed by Tenet as a physical therapist and was an insured under the Long Term Disability Group Policy No. 546864 001 sponsored by Tenet and insured by Unum.  A true and correct copy of the LTD policy is attached as **Exhibit "A"**.  Plaintiff paid 100% of the premiums for his LTD benefit.

6.      Unum was the insurer of the Disability Plan.  Premiums for participation in the Plan were paid to Unum and Unum made all claim decisions and paid all benefits owed under the Plan.  The Plan, through the Plan Administrator Tenet Benefit Administration Committee, delegated to Unum discretionary authority to make all benefit determinations under the Plan.

-2-

7.     The policy definition of disability under the Plan is:

You are disabled when Unum determines that:
- you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
- you have 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

After 12 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.[1]

"Gainful occupation" is defined as "an occupation that is or can be expected to provide you with an income at least equal to 60% of your indexed monthly earnings."

8.     On September 9, 2016, while employed by Tenet, Plaintiff had diagnostic arthroscopic surgery on his right shoulder performed by Dr. Kenneth Bramlett.  While recuperating from his shoulder surgery, Plaintiff suffered a bilateral cerebellar stroke with suspected left vertebral artery dissection.

9.     Plaintiff was hospitalized for treatment of his stroke at UAB from October 21 to October 23, 2016.  His attending physician was Dr. Toby Gropen, a vascular neurologist and Director of UAB's Comprehensive Stroke Center.

10.     Following his discharge from the hospital, Plaintiff continued to be seen

---

[1]The Unum policy has 4 groups of insureds depending on job position. Plaintiff falls in Group 4.

by Dr. Gropen and other healthcare providers at UAB for the residuals from his stroke, which included headaches, impaired hearing, poor visual tracking, and poor equilibrium.

11.     On or about February 17, 2017, Plaintiff filed a claim for LTD under the Unum policy.  After investigating Plaintiff's LTD claim, including obtaining his medical records and obtaining information from the Plaintiff, Unum determined that Plaintiff met the definition of disability under the policy and was entitled to a monthly benefit of $2,816.67.[2]  (See **Exhibit "B"**).

12.     On June 8, 2017, Unum wrote Plaintiff to advise him that as of March 8, 2018, his LTD claim would be evaluated under the "after 12 months of payments" definition of disability.  (See **Exhibit "C"**).

13.     Because of vision problems and headaches following the stroke, Dr. Gropen referred Plaintiff for evaluation to Dr. Michael Vaphiades, a neuropthalmologist at UAB's Callahan Eye Hospital Clinic.  Dr. Vaphiades saw Plaintiff on November 17, 2017, and concluded that plaintiff was suffering from Nystagmus, a condition that causes involuntary rapid eye movement that can lead to

---

[2]Unum determined the date of disability to be September 9, 2016, the date of Plaintiff's shoulder surgery.  Plaintiff no longer contends that he is disabled due to his shoulder condition, but does contend that he is disabled due to the residual effects of his stroke.

dizziness, sensitivity to light, and vision problems among other things.  Nystagmus can be caused by a stroke.  (See **Exhibit "D"** medical literature).

14.     On December 12, 2017, Unum wrote Dr. Gropen asking if Plaintiff was able to perform sedentary work.  On February 19, 2018, Dr. Gropen responded that in his opinion Plaintiff was unable to do sedentary work due to the residual effects of his stroke.  (See **Exhibit "E"**).

15.     On March 14, 2018, Unum wrote Plaintiff to advise him that they had completed a review of his LTD status under the "any occupation" definition of disability and that he continued to be eligible for LTD benefits.  (See **Exhibit "F"**).

16.     On that same date, Unum wrote Dr. Vaphiades asking if he thought Plaintiff could perform sedentary work.  On March 16, 2018, Dr. Vaphiades responded that Plaintiff could not perform sedentary work as he could not use a computer or document data due to his stroke and resulting Nystagmus.  (See **Exhibit "G"**)[3].

17.     On June 1, 2018, Unum again wrote Dr. Gropen asking if Plaintiff could do sedentary work.  On June 13, 2018, Dr. Gropen again responded that Plaintiff could not perform sedentary work.  (See **Exhibit "H"**).

_____

[3]Dr. Vaphiades also stated in his response that there was no treatment plan. There is no effective treatment for Nystagmus.  (See **Exhibit "D"**).

18.     Dr. Gropen saw Plaintiff again on December 5, 2018.  The addendum from his office note from that visit states, in part:

> He continues to have episodic visual symptoms, headaches, with associated photo phobia, nausea.  Exam notable for impaired mild tandum.[4]

(See **Exhibit "I"**).

19.     On December 5, 2018, Dr. Gropen referred Plaintiff to Dr. Robert Pearlman for evaluation of his headaches.

20.     Dr. Gropen's December 5, 2018, office note makes no mention, one way or the other, of Plaintiff's ability to return to work.  However, Plaintiff's physical condition as reflected by the office note is no different than it was at the June 4, 2018, office visit.

21.     On January 21, 2019, Unum again wrote Dr. Gropen asking if Plaintiff could do sedentary work.  On February 26, 2019, Dr. Gropen mistakenly responded that Plaintiff could do sedentary work. (See **Exhibit "J"**).  Dr. Gropen unequivocally recanted the February 26, 2019, statement on May 10, 2019, and again on May 31, 2019.  On May 10, 2019, Dr. Gropen wrote to Unum:

> "I am writing this letter to clarify the work capacity of Mr. Luke Hammond, a patient I have followed at the University

---

[4]Impaired tandem is an abnormality in heel to toe walking, one of the causes of which is neurologic injury.

of Alabama since he suffered a cerebral infraction on October 19, 2016.

Since his stroke, the patient has had continued difficulty with a "buzzy feeling around eyes" which occurs with head movement, bright lights, riding in cars, noisy environments, etc. He has difficulty explaining the sensation, but it sounds as though increased stimulation is the precipitating factor. He endorses daily headaches - usually developing after activity and building gradually throughout the day. These symptoms have persisted and were still present as of his most recent office visit on December 5, 2018.

I feel that these symptoms are related to impaired vestibulo-ocular function and are a consequence of his cerebellar and brainstem infarction. I feel that symptoms are severe enough to impair driving and preclude ability to work. In particular, I feel that he will not be able to perform even sedentary work involving computers.

If there are any further questions, I may be reached at (205) 975-8569."

On May 31, 2019, Dr. Gropen wrote:

"I do not agree. As a vascular neurologist and Director of UAB's Comprehensive Stroke Center, I feel that his [Plaintiff's] bilateral cerebellar and brainstem infarction is sufficient to impair his ability to perform sedentary work involving computers because of impaired vestibular occular function. This has always been my opinion."

(See **Exhibits "K" and "L"**).

22.     Unum also wrote Dr. Vaphiades on January 21, 2019, asking if he

thought Plaintiff could do sedentary work. On January 22, 2019, Dr. Vaphiades

responded that he did not believe Plaintiff could do sedentary work.  (See **Exhibit "M"**).

23.     On January 31, 2019, Dr. Vaphiades sent Unum a second response to the January 21, 2019, correspondence stating that Dr. Vaphiades would defer to other treating physicians as to whether Plaintiff could do sedentary work.  (See **Exhibit "N"**).

24.     On April 11, 2019, Unum again wrote Dr. Vaphiades asking if he thought Plaintiff could do sedentary work.  This time Dr. Vaphiades mistakenly responded yes.  Dr. Vaphiades recanted this mistaken statement in a letter to Unum dated June 13, 2019.  (See **Exhibit "O"**).

25.     On April 19, 2019, Unum wrote Plaintiff advising him that his disability benefit was being terminated because Unum had determined that Plaintiff was able to perform the duties of other alternate gainful occupations, and therefore, was not disabled under the terms of the policy.  Specifically, Unum stated that it had determined Plaintiff was physically able to do sedentary work, and with the assistance of its vocational department had determined that Plaintiff was reasonably fitted by education, training, or experience to perform the sedentary job of Office Manager which would provide an income of 60% or more of his indexed monthly earnings as defined by the policy.  The termination of benefits letter did not identify the

vocational specialist who made that determination, nor did it provide Plaintiff with any specifics as to how that determination was made, or how it could be reasonably expected that Plaintiff could get a job as an Office Manager given his education, training and employment experience.  (See **Exhibit "P"**).

26.     The termination of benefits letter advised Plaintiff of his appeal rights, but failed to give him any guidance as to what information would be needed to support his claim for continued benefits.

27.     Unum's finding that Plaintiff was able to perform sedentary work was based entirely on the mistaken opinions provided by Dr. Gropen and Dr. Vaphiades.[5]

28.     In order to perform sedentary work, a person must have frequent near acuity, depth perception, and occasional visual accommodation and color vision. (See **Exhibit "Q"**).

29.     Unum's letter to Dr. Gropen did not ask whether Plaintiff has the frequent near acuity, depth perception, and occasional visual accommodation and color vision required to perform sedentary work.  (See **Exhibit "R"**).

30.     On April 22, 2019, Plaintiff timely appealed the decision to terminate his disability benefits, providing a detailed description of his symptoms, the types of

---

[5]Unum also relied on the opinion of Dr. Hovater who treated Plaintiff for his shoulder injury.  Plaintiff does not contend he is disabled due to his shoulder issues.

activities that aggravated his symptoms, and the limitations on his activities by those symptoms.  He also expressed befuddlement as to how Unum thought he was suited for the job of Office Manager, since he had no management training or experience. He also provided details of his work experience demonstrating his lack of qualifications to be an Office Manager..  (See **Exhibit "S"**).

31.    Unum's appeal review consisted of a review by a second vocational specialist and a registered nurse. The registered nurse simply reviewed the existing medical information and observed that the treating physicians thought Plaintiff could perform sedentary work.  The vocational specialist reviewed the file and concluded that Plaintiff did not have the education, training, or experience to perform the job of Office Manager, but did have the education, training, and experience to perform the job of Hospital Admitting Supervisor.

32.    On May 9, 2019, Unum wrote Plaintiff advising him that his appeal was denied.  The letter informed Plaintiff that a vocational consultant had reviewed the claim and agreed that Plaintiff was not qualified to be an Office Manager, but was of the opinion that Plaintiff was qualified to be a Hospital Admitting Supervisor.  Again, the letter did not disclose the identity of the vocational consultant or provide the specific information which formed the basis of the vocational consultant's opinion that Plaintiff was reasonably fitted for and could be reasonably expected to get a

position in a field of employment for which he had no education, training or

experience.  The May 9 letter also informed Plaintiff that a "clinical resource" had

completed an independent review of the medical information in the file and did not

find any support for any medical conditions that would prevent Plaintiff from doing

sedentary work.  The letter failed to disclose to Plaintiff that the reviewer was an

Unum staff registered nurse, nor did it provide the identity of the reviewer.  (See

**Exhibit "T"**).

33.    On May 15, 2019, Plaintiff faxed Unum a letter authored by Dr. Gropen

dated May 10, 2019.  The letter read:

> To Whom It May Concern:
>
> I am writing this letter to clarify the work capacity of Mr.
> Luke Hammond, a patient I have followed at the University
> of Alabama since he suffered a cerebral infraction on
> October 19, 2016.
>
> Since his stroke, the patient has had continued difficulty
> with vision with a "buzzy feeling around eyes" which
> occurs with head movement, bright lights, riding in cars,
> noisy environments, etc.  He has difficulty explaining the
> sensation, but it sounds as though increased stimulation is
> the precipitating factor.  He endorses daily headaches -
> usually developing after activity and building gradually
> throughout the day.  These symptoms have persisted and
> were still present as of his most recent office visit on
> December 5, 2018.
>
> I feel that these symptoms are related to impaired
> vestibulo-ocular function and are a consequence of his

cerebellar and brainstem infarction.  I feel that symptoms
are severe enough to impair driving and preclude ability to
work.   In particular, I feel that he will not be able to
perform even sedentary work involving computers.

If there are any further questions, I can be reached at (205)
975-8569.

(See **Exhibit "K"**).

34.    Unum treated Plaintiff's submission of Dr. Gropen's letter as a timely
filed second appeal.  (See **Exhibit "U"**).

35.    As part of the second appeal review, Beth Schnars, a staff medical
consultant for Unum with a specialty in internal medicine, reviewed the files and
opined that "[t]he frequency of office visits, exam findings, level of personal activity
and lack of intensity of treatment are not consistent with a severity of symptoms that
would support inability to perform the activities" of sedentary work.  (See **Exhibit
"V"**).

36.    Dr. Schnars is wholly lacking in training and experience in the field of
medicine relevant to the Plaintiff's claim.  Based strictly on a paper review of the file,
Dr. Schnars opined there was insufficient evidence to support Plaintiff's claim of
disability, despite Dr. Gropen's opinion to the contrary.

37.    On May 22, 2019, Dr. Schnars wrote Dr. Gropen, stating her opinion that
the medical records do not support ongoing impairment that would preclude sedentary

work, asking whether Dr. Gropen agreed Plaintiff could do sedentary work, and if not, the medical and/or diagnostic testing forming the basis for Dr. Gropen's opinion. (See **Exhibit "W"**).

38.     On June 4, 2019, Dr. Gropen unequivocally expressed his disagreement with Dr. Schnars:

> I do not agree.  As a vascular neurologist and Director of UAB's Comprehensive Stroke Center, I feel that his bilateral cerebellar and brainstem infraction is sufficient o impair his ability to perform sedentary work involving computers because of impaired vestibulo-ocular function. This has always been my opinion.

(See **Exhibit "L"**).

39.     On June 13, 2019, Dr. Vaphiades wrote the Unum appeals unit, informing them that his April response that Plaintiff could perform sedentary work was in error, and that when he last saw Plaintiff in December of 2018, he was unable to perform sedentary work.  (See **Exhibit "O"**).

40.     On June 13, 2019, Unum again denied Plaintiff's appeal.  The denial was based entirely on a medical records review of Dr. Schnars, a staff physician of Unum, with an internal medicine speciality.  The June 13 denial informed Plaintiff that a physician board certified in internal medicine had reviewed the file and concluded that the medical records did not support any limitations that would prevent Plaintiff from performing the job of Hospital Admitting Supervisor.  The letter failed to

disclose the identity of the internal medicine physician, or the basis for the internal medicine physician's disagreement with Dr. Gropen other than to conclusorily state "[B]ased on a review of your claim file we have determined that the available information does not support Dr. Gropen's new opinion."  (See **Exhibit "X"**).

41.    Besides arbitrarily discounting the opinion of Dr. Gropen, the Unum denial letter also mischaracterized Dr. Gropen's opinion.  Unum repeatedly refers to Dr. Gropen's "new opinion", when it is clear from Dr. Gropen's May 31, 2019, response to Unum that he has always been of the opinion that the Plaintiff is unable to do even sedentary work.

## DEFENDANTS' BREACH OF FIDUCIARY DUTY

42.    Unum, as the fiduciary under the Plan, owes certain fiduciary obligations to the Plaintiff, as an insured under the Plan, in the consideration and evaluation of his LTD claim, including those minimum claims handling procedures contained in 29 C.F.R. § 2560.503-1.[6]

43.    Unum violated the minimum claims handling requirements, thereby breaching the fiduciary obligation owed to the Plaintiff in multiple ways:

    (a)    The April 19, 2019, termination of benefits notice fails to describe

---

[6]Many of these same claim handling procedures are contained in Unum's Summary Plan Description.

-14-

any additional material or information necessary to perfect the claim and an explanation of why such material or information is necessary;

(b)     The April 19, 2019, termination letter fails to identify the vocational expert who was consulted, or to give an explanation for the vocational expert's opinion that Plaintiff was fitted by education, training, or experience to perform the job of Office Manager, or could be reasonably expected to get a job as an Office Manager given his education, training, and experience.

(c)     The April 19, 2019, letter fails to either disclose the specific internal rules, guidelines, protocols, standards or other similar criteria of the Plan relied on in making the adverse determination, or stating that such rules do not exist;

(d)     In the appeal of the adverse benefit determination, Unum consulted with and relied on the judgment of a medical expert who did not have appropriate training and experience in the field of medicine involved in the medical judgment at issue, and Unum failed to identify that medical expert;

(e)     Unum failed to identify the vocational expert relied on in the appeal process, and failed to give an explanation for the basis of the vocational expert's opinion that Plaintiff was qualified to perform the job of Hospital Admitting Supervisor, or could be reasonably expected to get a job as a Hospital Admitting Supervisor;

(f)     In the appeal decision, Unum failed to give an explanation for the basis of disagreeing with or not following the views of the Plaintiff's treating physician;

(g)     Unum failed to get an independent review by a qualified physician or vocational expert, or to have an independent, qualified medical provider examine Plaintiff.

44.     Because of the failure to comply with the minimum claims handling practices of 29 C.F.R. 1560.503-1, Defendants have forfeited the benefit of the deferential standard of review, and *de novo* review should apply to this review.


## DEFENDANTS' TERMINATION OF PLAINTIFF'S LTD BENEFIT WAS ARBITRARY AND CAPRICIOUS

45.     Plaintiff is entitled to prevail even if the deferential standard of review applies because Defendants' reliance on a paper review by an unqualified staff physician to terminate Plaintiff's LTD benefit was arbitrary and capricious.

46.     In May of 2019, Unum learned that Dr. Gropen was still of the opinion that Plaintiff could not do sedentary work, and that his February 26, 2019, response to the contrary was a mistake.  Instead of accepting Dr. Gropen's opinion as it did in March of 2018, Unum asked Dr. Beth Schnars to do a paper review of the claim file and provide her opinion as to whether Plaintiff could perform sedentary work.

47.    Dr. Schnars' specialty is internal medicine.  She has no special training in neurology, much less vascular neurology.  Nevertheless, she reviewed the file and opined that the medical records did not support ongoing impairment which would preclude sedentary work.

48.    Dr. Schnars then wrote Dr. Gropen asking him to agree with her conclusion, or give the reasons why he did not agree.  Dr. Gropen responded:

> I do not agree.  As a vascular neurologist and Director of UAB's Comprehensive Stroke Center, I feel that his bilateral cerebellar and brainstem infarction is sufficient to impair his ability to perform sedentary work involving computers because of impaired vestibulo-ocular farction. This has always been my opinion.

49.    Despite this, Unum arbitrarily and capriciously and unreasonably favored the opinion of the in-house unqualified paper-reviewing physician over the treating physician and Director of the Comprehensive Stroke Center at UAB, and denied Plaintiff's appeal, giving only a conclusory rationale that the claim file material did not support Dr. Gropen's opinion.

50.    Unum also arbitrarily and capriciously mischaracterized Dr. Gropen's opinion as his "new opinion" when the record clearly reflected it has always been his opinion that Plaintiff could not do sedentary work and the checking of the "yes" box in February of 2019 was a mistake.

51.     Unum also arbitrarily and capriciously relied on an in-house vocational specialist who opined that Plaintiff was fitted by education, training, or experience to work as a Hospital Admitting Supervisor, even though Plaintiff has no relevant education, training, or experience in that area, and the vocational specialist never saw, interviewed, or tested Plaintiff.

52.     It is arbitrary and capricious to ignore reliable evidence in favor of unreliable evidence in order to arrive at the conclusion you desire.  *Oliver v. Coca-Cola Co.*, 497 F.3d 1181 (11th Cir. 2007).  A decision to deny benefits is arbitrary and capricious if no reasonable basis exists for the decision.  *Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1325-26 (11th Cir. 2000).

53.     Here, Unum ignored the reliable opinion of the Director of the UAB Comprehensive Stroke Center in favor of the unreliable opinion of an on-staff physician with no training or expertise in the field of the medical condition causing Plaintiff's disability.

## CAUSE OF ACTION

### COUNT ONE
**(Benefits Owed Under the Plan)**

54.     Plaintiff incorporates by reference and realleges as if fully set out herein all of the previous allegations of this Complaint.

55.     At all times relevant to this action, Plaintiff was a participant of the LTD

-18-

Plan within the meaning of 29 U.S.C. § 1002(7), was disabled as defined by the Plan, and is due benefits under the Plan due to his disability.

56.    Unum's denial of Plaintiff's appeal of the decision to terminate Plaintiff's disability benefits was wrong and is due to be reversed whether applying the *de novo* or arbitrary and capricious standard of review. The decision was wrong, was not reasonable and not supported by substantial reliable evidence.

57.    Plaintiff brings this action to recover benefits due to him and to enforce his rights under the Plan pursuant to 29 U.S.C. § 1132 (a)(1)(B).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court to enter judgment for Plaintiff and otherwise enter an Order providing that:

1.    The applicable standard of review in this case is *de novo*, and that the termination of Plaintiff's LTD benefits was wrong, or alternatively, that the termination of Plaintiff's LTD benefits was unreasonable, arbitrary and capricious if the deferential standard of review applies;

2.    That the Court take and review the records of Defendants and any others and any other evidence that it deems necessary to conduct an adequate review of the Defendants' termination of Plaintiff's disability benefits;

3.    That from April 20, 2019, through the date of the Court's judgment

-19-

Plaintiff met the Plan's definition of "Disabled";

      4.      That Defendants pay Plaintiff all benefits due for the period from April 20, 2019, through the date of the Court's judgment plus prejudgment interest;

      5.      That the Defendants shall pay Plaintiff's cost of litigation and any and all other reasonable costs permitted by law;

      6.      That Defendants shall pay attorney's fees for Plaintiff's counsel;

      7.      That Plaintiff shall receive such further relief against Defendants as the Court deems lawful, just, and proper.

      Respectfully submitted this _____ day of May, 2020.

**s/J. Michael Tanner**
J. MICHAEL TANNER
Bar Number: ASB-4455-R76J

**OF COUNSEL**
HALL, TANNER & HARGETT, P.C.
201 South Court Street, Suite 320
Florence, AL 35630
Tel:   256-381-7750
Fax:   256-381-4449
Email: mtanner@halltanner.com